Little hung us versus Tidwell Mr. Lindy that is like all the homework for me that mr. Georgia council table miss Fisk in the courtroom Jeff Lindy I am representing mr. Tyrone Tidwell who is the talent below in this criminal matter this may not bode well but we haven't conference the case and I'm sure that mrs. Osmer won't agree with it you're making two arguments one the withdrawal of the guilty plea the sake of argument why don't we just forget that for now and move on to the other argument the mrs. Osmer can make some consistent sense out of Jones and Harris and Macmillan and Castillo is another one but I'm having trouble making sense out of them a number of justices are having trouble making sense absolutely wouldn't it make some sense else my appreciation the courts precision wouldn't it make some sense just to remand it for resentencing under subsection a only forgetting about subsection B Mike I would bet if I were paying man the chances of you getting life on subsection a are extraordinarily good but you would get a sentence under subsection a it would remove the legal cloud that you're saying keeps in because you're saying subsection B is an element that you didn't get notice of wouldn't that be the simple way to do it your honor that that's one simple way to do it and frankly if this was remanded for resentencing under a 48 a no no we're talking I think his honor was not talking about a 48 yeah would be it would be under a because there's no way somebody's a 48 a the problem is a 48 B and a 48 a you can get up to you know there's an old saying it's not over till it's over if you look at the plea agreement the plea colloquy her honors comments I mean I have had them look I mean this man arguably your client has received an abundance of justice why should in terms of 848 be why should be any different treatment now I mean it's over what is your response to that your honor respectfully my response our response is that your honor's addressing our second issue which is argument 2 which obviously does implicate the rule 11 argument which is argument 1 but under under argument 2 because B sets forth separate elements B has to have been pledged and it has to have been approved and that's why if you then go back to argument 1 that's why we believe the rule 11 colloquy was insufficient although he was certainly advised of a maximum sentence of life in jail and although the term mainly for life would use your honor the crux of that argument is that never knew because he was never advised that he was being sentenced why shouldn't this court follow Harris follow the Seventh Circuit and harden I mean I could go down a whole list discuss this discuss this in detail standard I can't actually believe I'm in the Third Circuit using the tail of my dog I can't it's the law it's the law it's not sure okay and here what is the tail what is the dog I'm sorry the dog with the metaphor I didn't hear you I think I missed the dog is the CCE is the tail is 848 B Mr. Tidwell was sentenced to mandatory life only and purely for 848 B purposes because he was deemed to be a principal and that word isn't used that word is used nowhere else in 848 and because he was deemed to distribute it 150 kilos of cocaine or more and that amount is used nowhere else in 848 so the tail is 848 B the dog is the 848 A section and I think McMillan and Harris this case stands squarely with McMillan and Harris except the judge could have looked at the 150 kilos and his role vis-a-vis the other people involved in the enterprise under a and concluded this is somebody that I am simply going to incapacitate we're not talking about rehabilitation or even retribution this simply calls for an incapacitative sentence because he is dangerous the only way I can incapacitate him under subsection a to make certain he never gets out of prison again and hit him with the same sentence and he knew that that was exposure his exposure when he pled and if you look at the joint appendix pages 287 and 288 judge Randall said the defense contends that at the time of the guilty plea colloquy the use of the base offense level of 38 was not intended to stipulate that we were at the 150 level in terms of quantity that being one of the elements of 848 B I find this to be a difficult argument to make because you would not stipulate to an offense level based on something unless you were basing it upon what was agreed upon that's just to me sounds illogical because if it wasn't a hundred and fifty then the base level arguably should have been less now it's Lindy I could go on and on in terms of judge Randall's remarks concerning making it clear to the gentleman in question mr. Tidwell that there was a mandatory life sentence here involved and and I'm flexed in terms of what are we doing here so many years after in terms of this problem that's what's bothering me I must tell you that sir in all sincerity I respect your sincerity I respect your comments and I will say with equal respect and sincerity that we are here because the whatever else he was involved in his life was sentenced under vision that was not pled not proven in which he did not know but did he not know that it that when he did plead that it had a potential for mandatory life imprisonment yes if he pled under a potential for life for life is not a man yes get the life excuse me yes he did yes he did one argument in that regard is that discretionary life which is what I call which is what we call the life sentence under a 48a and mandatory life under a 48b are different and we do have a lot of cases obviously where we're Jones and Castillo and then of course as adopted by Vasquez as well where we talked about steeply increased sentence we have a but then but you're then arguing that to make your argument you have to have separate crimes in a and B yes and the the the $64 question becomes are these separate crimes or are these sentencing factors and that's how we get into Torres Jones Castillo Castillo and Harris how do you argue based on these cases that we have separate crimes and whatever you do it's going to be better than what I'm done thank you but I wouldn't be so sure your honor we're arguing an argument to that a 48b is a under cannons of statutory construction sets forth a separate crime if you look at the fact that the individual and if you look at the fact that he has to have a greatly increased quantity of drugs that he's responsible for we believe there's a separate element and if you why isn't that just an additional sentencing factor that's the kind of thing that any judge would consider in imposing sentence especially in a drug deal how big a role did the person play how many and the role are typical sentencing factors except if you look at the CCE statute itself and the CCE statute under Garrett of course it has been deemed a separate offense the CCE statute punishes offense conduct it punishes somebody who is the leader of five or more individuals we have a 48 we have a 41 we have a host of drug but the CCE statute itself punishes somebody who's the land that the government would have to agree with this was the leader of five or more people what a 48b does it takes the leader and it makes the punishment for the leader of the leader if the CCE statute is constitutional if the CCE statute punishes a leader of five people how can we not say that subsection B which wants to punish clear congressional intent they want to punish the boss of the bosses miss Lindy because let me read to you what amongst other things judge Rendell said at pages 206 and 07 now as mr. Weber went through the charges he was talking about offense level he was talking about mandatory sentences of life imprisonment and this these are matters that I will concern myself with over the next several months before you are sentenced that is what your sentence will be there are no agreements as to what your sentence will be clearly to the extent that these are mandatory punishments for these offenses I will have to impose these punishments unless there is some basis on which I would be able not to do so I am assuming that the motion that you are hoping the government will make with respect to assistance would be a way in which I could go below the mandatory life term and mandatory 20-year term but there is no assurance here that number one what you are doing for the government what you do for the government will be substantial number two that they're going to file a motion number three that I'm going to grant the motion and number four there's no telling how I am going to view the situation in terms of any departure in other words I may go down a certain amount whereby your attorney says oh I should give you this there is no assurance what I am going to do and there is no assurance what the government is going to do because all we have to do is see what happens so you understand that and mr. Tidwell answered in the affirmative now I have a problem here I'm reading English and I believe that judge Rendell in her usual fashion is speaking precisely that to the plain English that your honor is referring to at page 207 of the Joint Appendix at line 6 and 7, Judge Rendell makes a fatal mistake, and I'm not saying it's a fatal mistake at all, but she is the sentencing judge, clearly to the extent that there are mandatory five-year sentences. That's incorrect. If he was pleading to 8 foot 8 feet, there is no extent. There is only one sentence, your honor. I'm sorry to raise my voice, I don't mean to. There's only one sentence. Just don't pound the table. There's only one sentence, and we believe that line 6 and 7 is flawed, and it's greatly flawed in light of everything else, which again, not all of this is from Judge Rendell, a lot of this starts with the government when they did specifically. And some of it is from the plea agreement, which said, in boldface type, the plea agreement summarizes all of the possible maximum sentences. Tidwell acknowledged that the court may impose in caps, total maximum sentence, mandatory life imprisonment, a $21 million fine, lifetime supervised release with a mandatory minimum of five years' sentence. $1,100 special assessment, plus a criminal forfeiture of $3,777,600. Now, I could go on, but isn't that English? I mean, what are we supposed to assume? That Gibberish was being spoken, and you're a client. Extremely savvy person. There's no question in my mind. Now, Your Honor, I obviously do respect your opinion. I would retort that what we're supposed to expect is that the government properly charges an indictment and properly writes a plea agreement where 848B is included. Well, before Apprendi and Booker, they had no way. They could have, I guess. I don't know how you anticipate that, especially with the new definition of what the statutory maximum is. I don't know how anybody could have possibly anticipated that. I mean, but for the procedural history, Mr. Tidwell would not be able to around some of these arguments. So it would seem to indicate that the substantive crime is actually set out in C. And then where you have continuing criminal enterprise defined. Subsections A and B are also labeled penalties and forfeitures. And subsection B does not increase the maximum penalty set out in subsection A. So if there's anything we can glean from the four cases from the Supreme Court, it seems to be, and maybe the best one is Justice Kennedy's analysis in Harris, that these lead you to believe that we're dealing merely with sentencing factors. What would possibly lead you to the opposite conclusion? Your Honor, first off, we certainly understand the government's principle argument, and Your Honor is referencing that. If you look at 848B, it certainly has the look of a sentencing statute. If you look at that first line, any person who engages in the second line, well, I'm looking at my adult statute book, the second line says, shall be imprisoned. And after the shall, you have other aspects which certainly pertain to sentencing. However, again, what we would say is that the Supreme Court, in articulating the various tests, has made certain things clear. Number one, when you look at certain language, the court in Jones said, if the language is quite as important as elements, maybe it does rise to the level of elements. I go back to what I said about being a principle. In subsection A of B, it talks about that person being a principle, and again, and perhaps I am missing something here, but if Congress can enact a CCE statute which punishes a person for being the leader of five individuals, I don't know why it's not a separate statute when they further define a principle, or if you will, a leader of the leaders, and I think they've done that in subsection 1. Second of all, Your Honor, and I've referenced this before, the penalty we believe is steeply increased. You have the CCE statute. I didn't hear you. I'm sorry, sir. You have the CCE statute. I see that my red light is on. We have the CCE statute which says that the statutory sentence is 20 years to life. When you then under B increase it to mandatory life, we believe that is steeply increasing the sentence, and we believe that under the language of Castillo and Jones, certainly as adopted by the circuit, well, it has to be, but as articulated by wonderful opinions in Vasquez, this does, B, steeply increases the sentence. Well, what about, and I think it did serve some time, but the boss of bosses argument in terms of traditional sentencing. A traditional sentencing situation clearly would be a sentencing judge would separate out the sentence that he or she would give to a capo would clearly be a principle supervising five or more people. That sentence, however, given the exact same conduct, would be less than the sentence that would be imposed for the person the capo reports to, the ultimate boss or the don. But they're both principles in a sense. They're both organized. They're both involved with five or more people, but a judge would always, it would seem to me, distinguish in imposing the sentence that he or she would give. You'd give a different sentence to the don or the boss than you would to the capo. You wouldn't give the same sentence to the capo that you would give to the person the capo reports to. And again, that's just a traditional kind of sentencing distinction that any sentencing judge would make in trying to impose some sentence that has some proportionality to the conduct. Judge, I believe that, and I don't mean to assume something disrespectful here. I think that you're making my point. Under 848A, in the 20-to-life range, I mean, that's an enormous range. So the Congress, I believe, was saying, sure, somebody could be at 40 years, somebody else could be at 60 years. They can make that differential within that enormous range. I have to ask myself, well, why would they then later, because they did come back later, why did they come back later? And in a separate section, they didn't add this to A. They could have. They could have added this language to A. They didn't. They made a separate section where they talk about a principal, administrator, organizer, or leader. And I have to answer that question, well, I guess they want to treat this person very differently than a regular CCE leader. But as Judge Amber pointed out, subsection A doesn't contain the elements either. C contains the elements. Unless we're talking death, and it's pretty clear that's a separate provision in subsection A. Exactly, which is why I try not to analogize anything from A, because it says separately, and it's written differently. But I guess I would ask the Court, why is it, the Court doesn't have this answer, why is it that Congress didn't add these to A? I mean, if these are merely sentencing provisions, and A was already on the books, why didn't you just add it to A? Good question. We weren't there. We weren't present at the creation. We understand your argument. I think we will get you back in rebuttal, if you save some time. Thank you. Thank you, sir. Zosmer, how are you doing? Very well, thank you, Your Honor. Good morning. May it please the Court. Robert Zosmer on behalf of the government. Let me see if I can answer each of the questions that Your Honors have posed. First, Judge McKee's question, why don't we just remand this, given that I would place the same wager, that we would likely see a life sentence, or something very close to it, on the other counts of conviction, and on 848A as well. My answer to that is twofold. Number one, we view our role as defending the verdict of the district court, and we have not one but two district judges in this case who reached the conclusion that 848B is a sentencing factor,  and so my office doesn't feel like we're in a position to say to Judge Rendell and Judge Kaufman, well, thank you very much, but we're just going to now dismiss the 848B, and we'll proceed on the other counts. It just doesn't seem appropriate. Well, since Judge Rendell is one of us and would have to do additional work when the opinion circulates, she may welcome the opportunity to say, do send it back. Or she may recuse it. She would recuse it. She would recuse it. The second reason, Your Honor. He was looking for a way to take 15 sets back and punt and get the same result. And it's something that we do. The ball is going to be downed in the same yard line is what most everybody thinks. Well, we think so. But, again, we're now in the post-Booker period. The sentencing court would have much more discretion. This person, in the government's view, deserves a life sentence. He ordered the execution of two people. There's no getting away from that. We think it's an appropriate sentence. It's a legal sentence, and that's why we're here to defend it. The second reason that I would not suggest a remand is that this is an important issue regarding. Not a remand. This is an important issue regarding the construction of 848. But it won't come up anymore. You're charging these things now in the indictment, aren't you? Well, we are charging it now in the indictment, but that's prophylactically. We're doing that because we don't know. We're doing that because this court has not told us. But we have studied this statute. We do believe that these are sentencing factors, and we believe that this court, if this court agrees with that, we will go back to our practice of not charging 848B in the indictment, not submitting it to a jury. Charging 848C, having a jury find that it involved all the number of people in the series of continuing crimes. But this is an important question because it's our view that Congress's intent was that that is the way this statute is supposed to be enforced. And so I don't believe we should be in a position where we keep saying, well, we're going to do more than we think Congress intended because we're not going to ask the Court of Appeals to resolve this issue. So that's the reason that, you know, I'm very cognizant of the workload on this court, but I do think that this is an issue that at some point or another needs to be resolved. Let me try this. And you're brief, and I appreciate the concession. You said that if we were to find that subsection B is a separate offense and it's not just sentencing factors, you would agree that it's got to go back to resentencing. But under Nieder, I'm not sure why that's so. If someone has already basically admitted all of the elements of that subsection B offense, wouldn't Nieder say that any error would be a harmless error? And I don't like using Nieder in that sense or harmless error in that sense, but aren't we there? Yes, and we did argue harmless error in our brief, and maybe our mistake was we put it out of order. I think that the court should get first to the harmless error question, and it's our position that any error would be harmless, that if it was required that the government plead in the indictment that he was a principal organizer and that it involved more than 150 kilograms, and if it had been required that he plead to those elements at the guilty plea, the error is harmless under Nieder, under the recent Supreme Court decision in Requenco. Clearly, these are facts that have never been in dispute. The indictment did charge that he was the leader of this organization. That was the only theory on which this case was ever presented, and also that the case involved well more than 150 kilograms of cocaine. It was not disputed at sentencing. It wasn't disputed on appeal. It hasn't been disputed this morning. So what we're here is we're arguing legalisms about how these factors should be treated, but the error in this particular case would be harmless. Maybe this is not the best case to reach that legal issue that you want resolved. Correct, and that could be another reason to avoid the legal issue by seeing that the error would be harmless. Then our concession is that if we lose on all that, if we're wrong that these are sentencing factors, and if we're wrong that the error is harmless, then we agree it has to go back, it has to be resentenced under Boker and under 848A, and all the counts would see a resentencing. But our position obviously very strongly is that this was done correctly. A mandatory life sentence was correctly imposed on 848B, and therefore there's no reason to revisit any of the sentence given that the one mandatory draconian sentence has been imposed. Let me talk just briefly about... Even if it was B, would you still have to resentence under Davis? No, because it's a mandatory sentence, and this court and all other courts have agreed that and that's why we suggest affirmance. I'd like to talk briefly about just the facts of this case involving the plea. My good friend, Mr. Lindy, has suggested that the defendant did not know that he was pleading to mandatory life, and Judge Ackerman has already quoted many of the things that I would quote in response to that. It's just not accurate on this record, and the only thing that I want to add is he was told explicitly in the plea agreement and at the guilty plea hearing by the prosecutor several times that this was a mandatory life sentence, and he then said that he agreed with that. The only part that Mr. Lindy is focusing on is where the judge says, now, if I find it's mandatory, then I have no discretion, but otherwise I'll have discretion, and then you can appeal that to the Court of Appeals. That's the essence of what she says. That is exactly correct, because under our view and under Judge Randell's view, these are sentencing factors to be determined at sentencing. The purpose of Rule 11 is to advise the defendant of the maximum. What's the worst you could be looking at? It's always known that you're not telling a guaranteed sentence at the time of the guilty plea, so if the statutory maximum is 20 years, as this Court has often observed, most people don't get the maximum. You simply have to tell them at the guilty plea colloquy, you may get 20 years, and it's exactly right in this case to say the same thing. You may get a mandatory sentence of life imprisonment, and the reason to say may is because there are factors that the judge is going to have to decide at sentencing. The judge is going to have to decide under our view, was he a principal organizer, did this offense involve more than 150 kilograms of cocaine? So Judge Randell got it exactly right. But in order to say may get mandatory, you have to conclude from the Supreme Court cases that A or B is the sentencing factors. Correct, exactly, and that's why that issue. If you could just go through the four cases, Amadeus Torres, Castillo, Harris, and Jones. I mean, some of them I sort of played a game with myself trying to predict how they would come out. I got two out of four right. Right. Well, I think that you might want to use this. I mean, Harris to me was the cleanest, but maybe the argument with Castillo, it came out three weeks before Apprendi, and they were anticipating Apprendi. Who knows? Well, I think they're all fairly clear on this issue, and if I could try to take a shot. Clear? Let me try to take a shot at it. I'm so disappointed I can't begin to tell you. Your Honor. I can't refuse your offer to take a shot at it. Thank you. Your Honor, we're used to talking about Harris and Amadeus Torres and scratching our heads. And this Court, Judge McKee and Judge Ambrose, you've written most eloquently recently in your opinions in the Greer case. Couldn't have been that eloquent. It didn't carry the day, but it was eloquent. But you've written extensively on the difficulties in reconciling these opinions. But I think the important point I'd like to make first is that there are two issues in all of these cases. There's the statutory issue and the constitutional issue. The statutory issue being what is this thing? Is it a sentencing factor or is it an element of offense? If you can find that it is an element of offense, you're done and you know exactly how it must be treated. If it's not an element, which was the determination in Harris and Amadeus Torres, you have to go on to the constitutional issue. The constitutional issue is what's giving us all fits and trying to figure out how to reconcile it with Apprendi and Booker, which are constitutional decisions. The statutory part I don't think is that confusing. What happens on the statutory parts of these decisions is the Supreme Court has set forth a very clear and consistent method of analysis, which is what to look at. Look at the structure, look at the language, look at the legislative history, look at the purpose. The results may be different, but that's because these are different statutes. These are very fact-specific, statute-specific issues. Why don't you explain Jones, then, to me? Sure. Well, Jones, you have a statute that... Just for everybody, whoever possessing a firearm takes a motor vehicle, can, A, 1, be fined, prison not more than 15 years, 2, if serious bodily injury, not more than 25 years, 3, if death results, up to life. Right. Very different from what we have in our case, and that's why I say it's fact-specific. In Jones... But doesn't that look to you like a sentencing factor? Until you look at the factors, because when you look at those factors, the crime is taking a car by force and intimidation that's moved in interstate commerce. What increases the sentence are completely different. Serious bodily injury and death bear no relation to the underlying elements of the offense. That's how you take it. That's how you effectuate the taking. Well, it is, but it's still different in degree and kind from what's spoken of as the elements of the offense. The other thing that's very significant there in looking at the carjacking statute in Jones is that it increases the maximum. Another reason to stand back and say, we need to think really hard about whether Congress wanted to do this even before we get to the constitutional question, which the Jones case decided to put off. Why can't a judge decide if somebody's dead? Well, a judge can, but again, what we're looking for here is, with all respect, is congressional intent. What did Congress intend when they wrote the statute this way? And what the Supreme Court decides is that when the Congress decided that your basic maximum is 15 years, and now all of a sudden you're all the way up to life, far above the maximum, based on a fact that is not directly relevant to the elements of the offense, this looks an awful lot like a separate offense. That's what the Jones case is all about. Our case is very different in 848. It's an awful lot like Apprendi, anticipating Apprendi. Well, it did, but it needed... And it said that explicitly, and everybody saw the writing on the wall, but it didn't have to reach it once it found that these were elements that had to be charged and proven anyway, whether there was a constitutional requirement or not. But now when we look at our statute, what do we see here? The elements that raise you to a mandatory life are not different in kind from what is the underlying crime itself. The underlying crime in 848C says you have to be the manager of five or more people in a continuing series of events, and you have to get a substantial amount of resources. All 848... But aren't bodily injury and death merely separate, lesser-included offenses normally? Yes, and that was another point, Your Honor, and that was observed in Jones, is that Jones found that there were many other... I'm sorry, they are elements of lesser-included offenses. Right. Well, what Jones saw was that there is a history of Congress treating bodily injury as an element of an offense, not a sentencing factor. Here again, what we have in 848B, as I was saying, is the same exact factors as in 848C, only then some. You're not just the leader, you're the principal leader. You didn't just have substantial resources, you were involved in a large quantity or more than $10 million in a single year. They're the same factors, only more of them, and they are traditional sentencing factors. There could be no more traditional sentencing factors. Now go to Castillo. Just again, for everybody's purposes, whoever during a relation to any crime of violence or drug trafficking crime uses or carries a firearm shall, in addition to the punishment provided for in those crimes, be sentenced to imprisonment for 5 years, and if the firearm is a certain type of thing, it's 10 years, and if the firearm's a machine gun, it's imprisonment for 30 years. Right. The court there was looking at Section 924C, which was written differently at that time than it is right now, and what it saw there were just three entirely different sentences. Again, looking at the structure, it sees firearm, 5 years, machine gun, 30 years, and they're written in separate sentences. The court there also focused on the fact that there was a dramatic increase in the likely sentence from 5 years to 30 years. That's not true here, and that also distinguishes this case from Jones. Unlike Jones, where you're increasing the statutory maximum, in our case, you're not increasing the maximum. The maximum is life regardless. All Congress is doing is... When you first look at that, doesn't that just look like a sentencing factor? Yes, it does, and I'm not going to dispute my colleagues in the government who argue that it was a sentencing factor. That was the government's position in Castillo, and I think a credible argument could be made. My assumption is that what carried the day there was the dramatic difference. In a 924C offense with a firearm, in my experience in this court, you get 5 years. Nobody gets more than 5 years. When you have a machine gun, you get 30 years. That is a significant difference. Congress in 848B did not, other than expressing its very clear intent that the kingpin should get life, it did not cause a dramatic change. 848C is 20 years to life, but also by operation of the guidelines, which Congress approved at exactly the same time, just about anybody convicted of any CCE gets life or something close to it. You don't have the dramatic change that the machine gun enhancement could cause under 924C. Except you do go from 20 years to life. Now, you're arguing the maximum is the same, but in real practice, you're levying up the sentence substantially, aren't you? Well, what I'm saying is the maximum is the same and in real practice it's the same because of the operation of the guidelines that Congress has approved. I think it's important to, in thinking of congressional intent, if I could just take a few extra seconds, is look at the whole body here of what we're talking about. We're not talking about 924C. We're not talking about carjacking. We're talking about the Anti-Drug Abuse Act that was all passed in its various parts in the space of a few years, and it's very clear what Congress's intent was throughout. In 841, the main statute, it treated quantity as a sentencing factor. Now, that later ran into constitutional problems, but this court clearly held earlier that this was a sentencing factor that if you have more quantity under 841, your statutory maximum goes up. It approved the sentencing guidelines, which look to these same factors as reasons to greatly increase someone's sentence for quantity and for leadership role. 848B is of a piece with the exact same rulings that Congress is making at the same time. There's no reason to think that Congress thought in mandating life for a kingpin that it was doing anything dramatic because CCE defendants are not getting 20 years without 848B. It doesn't happen, and it can't happen under the guidelines that Congress itself approved at the exact same time. So that's why we don't think that this is a difficult matter in terms of interpreting statutory intent. We think that what those other cases do, maybe I haven't reconciled them perfectly, but what they do is they give us a guide. They tell us what facts to look at, and when you then look at those factors and apply it to 848B, we think the answer is fairly straightforward, and that's why these two district judges reached the correct conclusion. Thank you very much.  Mr. Ambrose, if I could take an attempt, perhaps an imperfect one, to reconcile all the cases which my good friend Mr. Zalzmer tried to reconcile, I think you reconcile them all because they're all talking about fairness. Everything since Apprendi has been about fairness, and I know I'm talking in broad sweeping terms here. Fairness seems to me you lose because this is someone who clearly understood what the exposure was when he pled guilty. If you look at what the substantive offense is, the CCE with the two executions, the incredible amount of drugs, and the fact the judge might have just simply wanted to incapacitate, it seems to me fairness would get you to life. And perhaps he will once again be sentenced to life by whatever district court judge gets assigned the case. However, if that happens, Your Honor, he'll be sentenced to life knowing that he's been charged with 848B, and knowing what the elements of 848B are, and full well knowing what he's getting himself into. That's what I meant, Your Honor, by fairness. How can we charge somebody and convict them and sentence them when what they're being sentenced on is not what's in the charging paper? And that's what 848B is all about. So what about Nader then? The Harmless Error? Which is a troubling case, but we're currently bound by it, obviously. The Cuenco, I'm not sure how you pronounce it, the Cuenco and Cotton, all of those cases are about jury verdicts. And I believe that if you look into those cases, what you're going to see is that the jury's heard evidence, and the judge after the jury hearing evidence sat back and said, okay, well, look, this was all presented to the jury. It's got to be Harmless Error. Look, we do have some, Judge Becker, actually, I think it was Judge Sloboda with Your Honor, perhaps joining in her dissent, has looked at this Harmless Error issue and has looked at the issue of fairness and has said, how can it possibly not be error to sentence, to increase somebody's punishment? But you're right, we joined in her dissent. Right. Now we have another shot. Now we have another shot. But those cases are clearly about evidence being presented to the jury. Here we have a plea of guilty, and what Judge Rendell or any district court judge would have to have done at that time was go through and do some sort of unbelievable calculus going through the indictment figuring out which amounts were distributed and of those amounts distributed, which were actually possessed. First of all, it's impossible to add up from the indictment whether he's in excess of 150 kilos or not because some are distributed and some are simply possessed. And we went through that analysis, and I don't need to belabor that now. But what is important is that with the plea, and particularly with the plea, how this happened, which was in the third day of trial, I think you can, it's very evident from the transcript how quickly this was put together because he pled on the third day of trial. The plea agreement was, I believe, although I was not there, I believe the plea agreement was written on the third day of trial, which is when he signed it. But Judge Rendell also said, let it be stated for the record that at the guilty plea colloquy, the defendant did plead guilty to an offense under 21 USC section 848. So that it was a, he did plead guilty to a CCE. There was no necessity, as far as I'm concerned, that he plead to 848B because, as I say, I believe it was a sentencing enhancer. Right. Well, we disagree with that. We disagree with that. But he did plead guilty to CCE, but he did not plead guilty to the 848B. So I understand what the judge said, but we respectfully disagree with that. Okay. Okay. Thank you very much. Thank you. That's a brief right. We thank counsel for an excellent argument, not surprisingly. And we'll take the matter into advisement. Please rise. This court is now in recess. ...thinking for myself, or constructive possession, but the firearm, the sawed-off shotgun, whether or not that's an antique firearm, seems to me to be... Now, the gun was made before 1898, obviously. That's correct, Your Honor. Now, the question then becomes, when you look at the statutory provision, it really looks at the ammo, as I analyze it. You know, 12-gauge shotgun shells technically fit in this board, do they not? That is correct, Judge. Special Agent Krays from ATF was successful in firing a 12-gauge shotgun shell from this shotgun. However,